Ryan P. Givey, Petitioner
610.348.5720
Rpg2609@aol.com
428 Hannum Ave.,
West Chester, Pa 19380



FILED BY_____ MMB _D.C.

MAR 24 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Ryan P. Givey,                          :
Petitioner                              :
                                        :
                                        :
v.                                      :
                                        :
                                        :   Case No:
Pamela Bondi,                           :
Jason A. Reding Quinones,               :
Respondents                             :
                                        :
                                        :
                                        :
                                        :
                                        :
                                        :

**PETITION FOR WRIT OF MANDAMUS**

1.  **Introduction**

2.  COMES NOW, Dr. Ryan P. Givey, requesting the Federal District Court for the Southern District of Florida to grant a Writ of Mandamus relief under it's original jurisdiction to compel the Attorney General Pam Bondi, United States Attorney Jason A. Reding Quinones, and FBI Director Kashyap Patel to take a criminal complaint from Givey and review evidence of federal crimes brought forth by Givey, or in the alternative, this Court can assign a special prosecutor or convene a grand jury to investigate these crimes. Givey also requests the Federal District Court for the Southern District of Florida to provide Givey and his family witness protection.

3.  United States Attorney Jason A. Reding Quinones has been tasked with investigating evidence of criminal conduct by agents of Biden's DOJ and this case presents evidence of

1

criminal conduct by agents of Biden's DOJ and also Judge Aileen Cannon is also involved with this investigation.

4. Givey's allegations of misconduct involve the technology contracts procured with federal Department of Education Title I Funds by his previous employer, a large urban school district, concerning large donors to the Democratic party, a private university where Givey earned his doctorate degree that employed Joseph Biden for many years, code enforcement officers in a small town with a Democrat mayor, illegal tampering with judicial proceedings and agents from Obama and Biden's DOJ, who still work at the DOJ, (who have hidden Givey's court cases from Trump's appointments at the DOJ by interfering with Givey's post office mail) and have protected them from criminal investigation for over a decade by refusing to take a criminal complaint from Givey, so there is no record of Givey's complaints.

5. Agents from Biden's DOJ, who still work at the DOJ, have intercepted Givey's US post office mail to Pamela Bondi, Kash Patel and Alina Habba so the mail was never delivered to tamper with a judicial proceeding (evidenced is attached in exhibits), in federal district court an Assistant US Attorney Mark Sherer, who has been blocking Givey from making a criminal complaint for years misstated Givey's allegations, stated the DOJ does not want to investigate his own conduct and then filed a response brief for Appellees, in that case, arguing the Department of Justice can simply turn away a victim and the DOJ does not have to speak to a victim or even listen to them, they do not have to review evidence and they do not have to take a criminal complaint, so there is no record of the DOJ's actions.

6. Mark Sherer is filing motions contrary to the stated agenda of President Trump and Pamela Bondi, he refused to refer a Motion to Disqualify to the DOJ Office of General Counsel (as

2

required by the DOJ manual) and personally responded to the Motion to Disqualify in a three sentence opposition motion requesting the Court to deny the motion to disqualify (evidenced is attached in exhibits), upon appeal Mark Sherer and the court ignored a motion to disqualify and Sherer filed a Brief claiming he is representing Appellees in that case. Assistant US Attorney Mark Sherer filed multiple motions to the court stating that the DOJ does not want to investigate his own conduct from 2022 (where he was involved in blocking Givey from making a criminal complaint for years), he repeatedly filed motions contrary to the law and misleading to the court and contrary to the statements and agenda of President Trump, Pamela Bondi and Kash Patel to identify waste, fraud and abuse in federal spending and discontinue funding for the Department of Education. Agents from Biden's DOJ have hacked Givey's phone, interfering with his phone calls, emails, internet search results and interfered with his post office mail, as has been reported by others in federal lawsuits, to interfere with Givey's lawsuits and him obtaining legal counsel.

7. A judge was illegally switched to rig a trial against Givey in a custody hearing brought to interfere with his federal lawsuit demanding the DOJ take a criminal complaint (evidenced is attached in exhibits). Givey was threatened before the hearing that he would never see his children again if he did not commit perjury to testify that he no longer believes in his criminal complaints and when he refused his children were illegally removed from his custody. After Givey alleged the judge was illegally assigned, had a conflict of interest, lacked jurisdiction and violated his rights, without explanation, the court illegally switched the judges again to a judge who proceeded to violate Givey's rights and make false statements to the appeals court (evidenced is attached in exhibits).

3

8. On appeal the Court issued four Sua Sponte, anonymous, per curiam orders, contrary to the law that misstated the cited precedent, that were entered into the court's filing system despite not being signed by the Prothonotary, as required by statute for a valid order of the court (evidenced is attached in exhibits). If there is a criminal investigation into this matter no one can be held responsible for these illegal orders because it does not name any judge and is not signed by the prothonotary.

9. Givey's lawsuit in state Court demanding the State Attorney General to take a criminal complaint was illegally dismissed in a Sua Sponte, anonymous, per curiam order, contrary to the law, that was entered into the court's filing system despite not being signed by the Prothonotary as a valid order of the court (evidenced is attached in exhibits). This case was before the same court Trump claimed rigged his 2020 election lawsuits. If there is a criminal investigation into this matter no one can be held responsible for these illegal orders because it does not name any judge and is not signed by the prothonotary.

10. Givey's federal lawsuit in 2025 was selectively assigned by court staff to the same Obama-appointed judge who illegally dismissed his lawsuit in 2022. With 37 judges in that court, there is a 0.073% chance that Givey's lawsuits were randomly assigned to the same judge twice in a row. The court ignored an emergency motion to provide witness protection and immediately dismissed the case after Givey made the judge aware of the illegal events that occurred with the custody case brought to interfere with his state and federal lawsuits demanding law enforcement take a criminal complaint.

11. Before the Third Circuit Court of Appeals in 2023 the Court authored an outrageous description of Givey's claims that has been repeatedly quoted and used against him in subsequent court cases. The Third Circuit affirmed the disqualification of Alina Habba, an

honest prosecutor. The Third Circuit used their judicial authority to attack Givey, a whistleblower, by authoring an outrageous opinion which misstated Givey's claims, that was affirmed by 13 judges on the court, and that opinion was published all across the internet and repeatedly used as a basis to discredit Givey in court, including his custody hearings and appeals and also used in Assistant US Attorney Mark Sherer's filings in district court and before the Third Circuit. In 2023 when Givey's case was before the Third Circuit, Givey was illegally drugged leading to an emergency room visit, Givey tested positive for buprenorphine and he was threatened to drop his appeal, which he refused to do. Givey's family has told him they have also been drugged and threatened. When Givey visited the Third Circuit Courthouse and requested an audience with a judge because he had been illegally drugged and threatened to drop his appeal, the court staff refused allow Givey to speak to a judge and Givey's appeal was dismissed. Givey has been repeatedly illegally drugged and threatened since. In 2026, the Third Circuit has ignored an emergency motion to provide witness protection and an emergency motion to disqualify Assistant US Attorney Mark Sherer, not responding to these emergency motions for months, allowing judges to be switched to tamper with a judicial proceeding, allowing state court staff to enter orders which are not signed by prothonotary to tamper with a judicial proceeding and allowing Givey and his family to be illegally drugged and threatened.

12. The US Supreme Court has denied certiorari in US Supreme Court cases, Givey v DOJ, 23-7063 and Givey v Givey 25-6035 and has a case pending In Re Ryan P. Givey 25-6881. There is literally evidence of federal crimes posted on the US Supreme Court's publicly available dockets. From speaking to the Clerk of Courts Givey does not believe his lawsuits are being seen by the Supreme Court justices. It is Givey's understanding that Supreme Court

5

cases are sent the justices law clerks and who are supposed to notify their justices of cases worthy of certiorari. With all the misconduct involved in these court cases Givey believes that the law clerks are able hide his lawsuits from the justices. In case Givey v DOJ, 23-7063 Elizabeth Prologer, Solicitor General at the time, wrote a letter to the US Supreme Court declining to respond to his lawsuit, so she had reviewed his case.

13. Since his post office mail has been interfered with, Givey was required to file this Writ of Mandamus with a process server and could not immediately pay the docketing fee and would like permission to file electronically so he can pay the required fee in PACER.

14. **Jurisdiction and Venue**

15. US Attorney Jason A. Reding Quinones, was tasked with investigating conspiracy allegations of criminal conduct concerning agents from Biden's DOJ therefore requiring him to take a criminal complaint concerning agents from Biden's DOJ is appropriate and also Judge Aileen Cannon is also involved with this investigation therefore venue is proper. In federal court case Givey v DOJ the court found that a complaint of misconduct concerning the DOJ can be brought in any district court, finding that when Givey filed his lawsuit against the local DOJ office it was improper and must be filed through district court against the main office of the DOJ. Therefore, any district court can hear a case of misconduct by the DOJ. Furthermore, agents from Biden's DOJ, who still work at the DOJ, have intercepted Givey's US post office mail to hide his lawsuits from Trump's appointments at the local DOJ office and have court staff that are rigging trials in the local, state and federal courts by having the court staff selectively assign court cases to specific judges, which is a common accusation by Trump's supporters believing court staff are rigging trials against his administration, including his election lawsuits which took place in the same jurisdiction. The local DOJ office and the

6

local courts where this misconduct occurred cannot investigate themselves. There simply is no precedent for a court case such as this. Therefore, venue is proper.

16. Pamela Bondi, Kashyap Patel and Jason A. Reding Quinones are federal law enforcement officers bound by Federal Law and the orders of the Federal Court of the Southern District of Florida, and can be compelled by order of this court to take a criminal complaint and refer that complaint to a grand jury under 18 U.S.C. § 3332(a), which is within the jurisdiction of Federal Courts with relief sought in a Writ of Mandamus, therefore jurisdiction is proper.

17. **Parties**

18. Petitioner: Dr. Ryan P. Givey is a male, citizen of the United States residing at 428 Hannum Ave., West Chester, Chester County, Pennsylvania, United States, 19380. Phone number 610-348-5720, Electronic Mail, rpg2609@aol.com

19. Respondent 1, Pamela Bondi is the United States Attorney General for the Department of Justice with an office located at 950 Pennsylvania Ave., NW, Washington D.C., 20530-0001.

20. Respondent 2 Jason A. Reding Quinones, is the United States Attorney in charge of the DOJ Office for the Southern District of Florida, located at 99 N.E. 4ᵗʰ Street, Miami, Fl 33132.

21. **FACTS UPON WHICH RELIEF IS SOUGHT**

22. * All facts are the to the best of Givey's recollection and beliefs and all persons named and unnamed should be presumed innocent unless found guilty in a court of law.

23. **BASIS FOR WRIT OF MANDAMUS**

24. A writ of mandamus requires a clearly established right and the denial by a government agent to perform their duty thus violating that clearly established Right.

25. United States citizens have a clearly established Right to petition the government for redress of grievances under the First Amendment of the United States Constitution and federal courts

7

have held the Right to petition involves the Right to file a criminal complaint with law enforcement.

26. Assistant US Attorney Mark Sherer, who worked under Biden's DOJ, has claimed to represent Pamela Bondi, Kash Patel, while Bondi and Patel's mail were intercepted at the post office and has been involved with two of Givey's federal court cases over the last four years. Sherer refused to refer a motion to disqualify to the DOJ office of General Counsel in district court as required by the DOJ policy manual and personally responded then ignored a motion to disqualify before the Third Circuit, misstated Givey's allegations, stated the DOJ does not want to investigate his own conduct and then filed a response brief for Appellees arguing the Department of Justice can simply turn away a victim and the DOJ does not have to speak to a victim or even listen to them, they do not have to review evidence and they do not have to take a criminal complaint, so there is no record of the DOJ's actions. Sherer has filed numerous motions contrary to the law, claiming the DOJ does not want to investigate his own conduct and the motions are contrary to the statements of President Trump, Pamela Bondi and Kash Patel.

27. Never before in the history of this country has it been in dispute whether a citizen has a Constitutional Right under the First Amendment of the United States Constitution to file a criminal complaint with law enforcement.

28. Courts have found reporting criminal conduct, executing a criminal complaint with law enforcement and assisting with a law enforcement investigation each constitute an exercise of the First Amendment right to Petition. See, e.g., Gable v. Lewis, 201 F3d 769, 771 (6th Cir. 2000); Estate of Morris ex rel. Morris v. Dapolito, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004) (concluding that swearing out a criminal complaint against a high school teacher for assault

8

and seeking his arrest were protected First Amendment petitioning activities.); Lott v Andrews Ctr., 259 F. Supp. 2d 564, 568 (E. D. Tex. 2003) (noting that, "[t]here is no doubt that filing a legitimate criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right.); United States v. Hylton, 558 F. Supp. 872, 874 (S.D. Tex. 1982) (noting that filing a legitimate criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right). By refusing speak with Givey and take a criminal complaint the DOJ has violated Givey's Constitutional Right to petition.

29.  Givey has established that he has a Constitutional Right to make a criminal complaint and government agents have refused to perform that duty, thus violating his rights.

**30. MISCONDUCT AT THE DOJ OFFICE**

**31.** Kash Patel, Pamela Bondi and Donald Trump have all publicly stated there was misconduct from DOJ agents from Biden's DOJ, who are still working at DOJ.

**32.** Assistant US Attorney Mark Sherer worked under Biden's DOJ and if there is evidence of misconduct Pamela Bondi and Kash Patel would want it exposed and investigated but Mark Sherer is filing motions in court claiming to represent Respondents stating he does not want his own conduct investigated.

**33. Motion to Disqualify**

34. Assistant US Attorney Mark Sherer has refused to speak to Givey, review evidence or take a criminal complaint and he filed multiple motions in court, contrary to the law, stating that he did not want the DOJ to investigate his own conduct, prompting Givey to file a Motion to Disqualify due to ethical violations and a conflict of interest.

35. Like all attorneys, Assistant US Attorneys are required to follow the ethical rules and rules concerning conflict of interest in the jurisdiction in which they practice, as well as rules of

professional conduct in general. United States v Kinser, No 7:15CR00061, 2016 U.S. Dist. LEXIS 28153, at *6(W.D. Va. Mar. 4, 2016) see also 28 U.S.C. § 530B (requiring that federal government attorneys are "subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State")

36. 204 Pa. Code Rule 1.7 Conflict of Interest (a) (2) states that a conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or **by a personal interest of the lawyer."**

37. Attorneys who work for the United States DOJ are also required to follow the policies and procedures laid out in the Justice Manual. According to the Justice Manual policies when an Assistant United States Attorney becomes aware of an issue that "could require recusal... as a result of an actual or apparent conflict of interest, they must contact [the DOJ Office of General Council]" see U.S. Dep't of Just., Just. Manual § 3-1.140. The Justice Manual states that the requirement for recusal arises "where a conflict of interest exists or there is an appearance of a loss of impartiality."

38. Since the Assistant United States Attorney's duty is to pursue the public interest, the Supreme Court has recognized the "requirement of a disinterested prosecutor." Young v United States ex rel Vuitton Et Fils S.A., 481 U.S. 787, 808 (1987)

39. An interested prosecutor would not be "in a position to exercise fair minded judgement" Ganger v Peyton, 379 F.2d 709, 713 (4ᵗʰ Cir. 1967).

40. A "scheme injecting personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some

contexts raise serious constitutional questions." Marshall v Jerrico, Inc. 446 U.S. 238, 248-50 (1980).

41. Sherer twice refused to refer the Motions to Disqualify to the DOJ office of General Counsel as required by DOJ policy in federal district court and before the Third Circuit and personally responded in District Court (Exhibit 1) while simply ignoring the Motion to Disqualify before the Third Circuit and filing a Brief for Appellees. Givey believes he is hiding this lawsuit from Trump's appointees at the DOJ.

## 42. Interfering with Pamela Bondi, Kash Patel and Alina Habba's Post Office Mail

43. Sharyl Attkisson[1], an investigative journalist who reported on Obama's Fast and Furious operation, sued the United States Post Office and the DOJ when she claimed her mail and phone were being tampered with in the same way described by Givey. Givey has found his phone hacked, tampering with his internet search results, phone calls, emails, texts, post office mail and he cannot post on social media.

44. In February 2025 Givey had sent via United States Post Office certified mail copies of his lawsuit addressed to Kashyap Patel to be delivered to the FBI office in Washington, D. C. and Pamela Bondi to be delivered to the DOJ office in Washington, D. C.

45. The mail was scheduled to be delivered to the FBI office and DOJ office on Monday February 24, 2025.

---

[1] https://en.wikipedia.org/wiki/Sharyl_Attkisson

46. The post office did not deliver Givey's packages to the FBI office or DOJ office as scheduled on February 24, 2025.

47. The post office opens at 9:00 am.

48. At 5:28 am on February 25, 2025 (Exhibit 2) someone collected Givey's lawsuit addressed to Pamela Bondi from the post office so it could not be delivered to the DOJ office. As you can see the package was at the post office in Washington D.C. on February 24, 2025 but claims it was picked up in Brattleboro VT.

49. At 5:29 am on February 25, 2025 (Exhibit 3) someone collected Givey's lawsuit addressed to Kashyap Patel from the post office so it could not be delivered to the FBI office.

50. According to a Google search mail is normally delivered directly to FBI office and to the DOJ office.

51. Therefore, someone intercepted delivery of Givey's lawsuits and those packages were not delivered directly to the FBI office or the DOJ office.

52. Those packages that were intercepted at the post office and were not delivered and ended up in the hands of Assistant US Attorney Mark Sherer, who has been filing motions contrary to the stated agenda of President Trump, Pamela Bondi and Kashyap Patel and claiming the DOJ does not want to investigate his own conduct.

53. If someone is interfering with Pamela Bondi's mail and Kash Patel's mail it is serious National Security risk and a federal crime.

54. There is no evidence that Mark Sherer informed Pamela Bondi and Kash Patel that their post office mail is being interfered with.

55. Alina Habba is a senior advisor at the DOJ and former United States Attorney for the District of New Jersey, whose disqualification was affirmed by the Third Circuit Court of Appeals.

56. When Alina Habba was a lawyer in 2024, Givey was unable to call her law firm, email her, an error code would appear when he attempted to complete form on her website and his certified post office mail was undelivered and returned (Exhibit 4).

57. After Givey's lawsuit was dismissed in 2025 in federal district court, twice he attempted to mail his Notices of Appeal and filing fees through the US Post office mail and the mail became lost for weeks, until Givey contacted a process server to deliver the Notices of Appeal and filing fees, after which the mail was promptly delivered.

**58. Criminal Investigation into Givey**

59. In federal district court Givey accused the DOJ of launching a fraudulent criminal investigation into him to interfere with his lawsuit against the DOJ. Mark Sherer denied this accusation in a court filing. When Givey filed a motion to compel Sherer to confirm that statement in a sworn affidavit, Sherer refused to respond and the court ignored the motion.

**60. Interference with Givey Obtaining Legal Counsel**

61. Sidney Powell is a lawyer who is admitted to practice at the US Supreme Court and wrote a book exposing corruption at the Department of Justice. When Givey calls her phone number listed on her law firm's website and the Texas State Bar website it says that her number is disconnected and Givey has a video to prove this. An error appears when Givey attempts to complete the form on her website to request services. Since Givey's mail has not been delivered in the past, Givey hired a process server to deliver his petition and request for services.

62. The process server claimed that Sidney Powell does not have an office located at the address listed on her law firm's website or on the Texas State Bar website but said that Sidney Powell has a mailbox there that she checks about once a

13

month. The process server left the request for services with the mail clerk at the mail room. The following day Givey received a fraudulent email from a proton mail account from someone claiming to be Sidney Powell's executive assistant and declining services (Exhibit 5). Sidney Powell's law firm uses the @federalappeals.com domain for emails and not a proton mail domain. This email was clearly fake. If someone is interfering with potential clients contacting Sidney Powell, it is a matter of great concern for the Court and for Sidney Powell.

63. **THREATS AGAINST WITNESSES**

64. Gerald Shur, the US Attorney who invented the Witness Protection Program, detailed in his book WITSEC[2], how organized crime would always threaten and kill friends, family members and children of whistleblowers, while stating his reason for creating the US Witness Protection Program and the necessity to immediately provide a witness with protection. Givey has proven through state and federal lawsuits that local, county, state and federal law enforcement and local, state and federal courts have blocked Givey from making a criminal complaint for over a decade, while allowing Givey, his family and friends to be threatened.

65. Givey was denied witness protection in 2022 and again in 2025 leading threats against Givey and his family.

66. Sherer in his brief before the Third Circuit misstates Givey's claims and then calls those misstated claims implausible.

---

[2] Earley, Pete. WITSEC. New York, Bantam Books, 2002.

14

67. Givey's sister told him in Spring 2015 that she was being threatened and indicated that other family members were also being threatened at that time.

68. On Christmas day 2023, while Givey had a lawsuit before the Third Circuit Court of Appeals, Givey was illegally drugged and tested positive for Buprenorphine and after Givey told his father, his father immediately called Givey saying "You know there are drugs that can kill you and are undetectable in your system a few hours later." In the hospital that day Givey's sister told him that she and other family members have also been drugged to threaten them. Court staff at the Third Circuit Court of Appeals blocked Givey from speaking with a judge to request witness protection.

69. Within about three months of Givey's emergency room visit on Christmas 2023 Givey's two younger sisters had to be admitted to the hospital emergency room and both almost died. Givey believes their food was tampered with drugs to threaten their lives.

70. Givey was threatened before an emergency custody hearing on January 3, 2025 that if he did not commit perjury and testify that he is mentally ill and no longer believes in the criminal allegations then he would never see his children again, then when he refused, his children were illegally removed from his custody. Evidence concerning the hearing appears in US Supreme Court cases 25-6881 and 25-6035.

71. Givey has been illegally drugged dozens of times since his request for witness protection was denied in 2022 and 2025, putting his life in danger.

72. As local, state and federal law enforcement blocked Givey from filing a criminal complaint for years, all around the same time, Givey and three of his friends, including his two best friends, all with no history of mental illness, were sabotaged at work, followed and

fraudulently declared mentally ill. Givey's evidence of a fraudulent diagnosis is cited in US Supreme Court case 25-6035 and evidence is also advanced below.

73. Their preferred method of threatening a witness is to drug them by tampering with their food because the victim cannot identify the perpetrator and the victim consumes all the evidence, making it the perfect crime and they also often attack a victim financially, interfering with the victim's employment and causing damage to their property costing repairs (in the last two years, someone climbed on Givey's roof and caused $6,500 damage and Givey has pictures of the pry marks in the wood where someone damaged his roof to prove it, they damaged his car causing over $7,000 in damage and the custody lawsuit has cost about $35,000). They did this to Donald Trump, targeted his friends and family, Paul Manafort, Michael Flynn and Roger Stone and went after his businesses.

74. When drugging their victim they can either drug them acutely with psycho-active drugs or expose them to drugs or chemicals over a long period of time causing health complications, they can use Wifi and Bluetooth blockers to shut down your alarm system and doorbell camera and then can enter your home and put the drugs in your coffee creamer that you drink every morning and they then interfere with your medication and medical treatment.

75. Assistant US Attorney Sherer has cited multiple other federal lawsuits in district court claiming that those lawsuits made similar claims of having their food tampered with drugs, causing health conditions, interference with medication and medical treatment, interference with employment and/or the abuse of psychiatry with the federal courts dismissing their lawsuits. Some of the claims cited by Sherer before the court were:

76. "In addition to this Court's dismissal of Givey's prior case, numerous courts have dismissed the same types of fantastical claims asserted in Givey's Amended Petition. *See, e.g., Jean-Baptiste v. U.S. Dep't of J.*, No. 24–12948, 2025 WL 561441, *3 (11th Cir. Feb. 20, 2025) (dismissing claims that an FBI agent conspired with a bartender and hospital staff to poison

plaintiff and deny him medical care); *Weir v. FBI*, 2023 WL 7018415, *3 (W.D. Pa. Sept. 1, 2023), *R&R adopted*, 2024 WL 323305 (W.D. Pa. Jan. 29, 2024) (dismissing claims that government agents poisoned plaintiff and bored holes into his house to pump in toxic odorless poisonous gas, sabotaged his car, poisoned his food on multiple occasions and stalked and surveilled him); *Jideani v. WMATA*, 979 F.Supp.2d 77, 79 n.1 (D.D.C. 2013) ("Plaintiff's vague and fanciful allegations of conspiracy to commit murder, invasion of privacy, food poisoning , medical malpractice and the like are so attenuated and unsubstantial as to be absolutely devoid of merit."); *Papadopoulos v. United States*, 2010 WL 3155035, *6–7 (S.D.N.Y. June 9, 2010), *R&R adopted*, 2010 WL 3155037 (S.D.N.Y. Aug. 9, 2010) (dismissing claims that FBI agents harassed plaintiff's son, shut down his business, enticed his wife to seek divorce, prevented him from obtaining employment, used pretend girlfriends as informers, and interfered with firms in which he had accounts to ensure he lost money); *Bloom v. U.S. Gov't*, 2003 WL 22327163, *4–5 (S.D.N.Y. Oct. 10, 2023) (dismissing claims that government wanted to murder and lynch plaintiff and drugged him to keep him from pursuing dentistry); *America v. N.Y. Passport Ctr.*, 1991 WL 258763, *1 (S.D.N.Y. Nov. 27, 1991) (dismissing claims that the government, CIA, the Soviet Union, and communists used laser beams to weaken plaintiff's concentration, bugged his phone, and interfered with his sex life); *Kolev v. Davidi,* 2008 WL 4447561, *1–2 (C.D. Cal. Sept. 29, 2008) (dismissing claims that the government and various agencies forced plaintiff's wife to divorce him, crashed into his car, hindered his access to courts, tempted him to commit criminal acts, wiretapped his telephones, and forced him out of his residence)."

77.

78. The problem with Sherer's claims is that, unless the DOJ is tampering with Givey's search results again, Sherer's descriptions do not accurately describe the lawsuits. Researching these claims, these lawsuits dealt with things like employment discrimination and bankruptcy and had nothing to do with what Sherer claims when he requested the court to dismiss Givey's lawsuit.

79. The most devasting weapon utilized to threaten witnesses today is the electronic pill that was invented in 2018[3], that was used on Givey once in 2023.

80. The electronic pill deploys a needle in your stomach where you have no pain receptors and connects to WIFI or Bluetooth to wirelessly administer the drugs.

---

[3] https://news.mit.edu/2018/ingestible-pill-controlled-wirelessly-bluetooth-1213

17

81. The victim is roofied, to drug them and impair their memory and then made to swallow an electronic pill where they can be threatened, drugged or even murdered at any time in the future.

82. Here is a picture of Givey's bedroom door (Exhibit 6) that was recently installed at the time that it was damaged after he was roofied and the perpetrators damaged his bedroom door to break into his bedroom while he was unconscious, where he kept an extra supply of food and water.

83. Givey met R.K. in May 2022 and they began dating. Three times while they were dating R. K. had been illegally drugged.

84. Shortly after Givey and R.K. began dating, her brother in law claimed he was fired under false pretenses and then surveilled at his house and followed when he left his home.

85. After they began dating R. K.'s sister began having her long-time employment threatened, her oldest brother lost his job and after long-time unemployment had to leave his family in South Carolina and move to New York to find employment, her other brother, a millionaire, who owns a million dollar home in Florida and had been retired for years after a work injury settlement, moved away from his home to Pennsylvania and took a dishwashing job, where he complains of mistreatment, complains that he misses his family and lost fifty pounds in three months, R.K. was diagnosed with a serious medical condition and R. K.'s father was diagnosed with cancer.

86. All of R. K.'s long-time friend group of twenty years began having problems with their employment, separation from their families or developed health concerns before they stopped talking to R. K. for a year.

87. Givey and R. K. were talking about a Reddit post about the RICO statute. Givey said "Organized crime used to threaten your family to get you to do what they want." R. K. replied "Organized crime still does but they don't threaten your family, they hurt your family over and over again until you do what they want."

88. Sherer's brief before the Third Circuit misstates Givey's claims and then claims the DOJ has no obligation to listen or respond to a criminal complaint, review evidence or even make record of that complaint, while citing irrelevant court cases like *Rodriguez v. Newsom*, 974 F.3d 998, 1010 (9th Cir. 2020) concerning citizens petitioning the government for changes in the way they select presidential electors, *Smith v. Ark. State Hwy. Emp., Loc. 1315*, 441 U.S. 463, 464 (1979) with the government ignoring a union grievance or *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285–86 (1984) stating that the college can ignore representatives from the faculty that are not are designated faculty to engage in negotiations. Simply put, Sherer's brief misrepresented these cases to the Court and there is no precedent for the DOJ to refuse to speak to a victim, listen to and respond to a criminal complaint, review evidence and investigate those crimes.

89. Sherer's brief before the Third Circuit cites inapplicable cases claiming Givey does not have an interest in the government prosecuting another citizen. In *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), a 50 year-old court case where the petitioner wanted the defendant prosecuted for not paying child support with the Court stating "in the unique context of a challenge to a criminal statute, appellant has failed to allege a sufficient nexus between her injury and the government action which she attacks to justify judicial intervention." So, in the "unique context" of that case the court did not require law enforcement to prosecute because the injury did not match the criminal statute.

19

90. In the other case cited *Wheeler v. Ulisny,* 482 F. App'x 665, 669 (3d Cir. 2012), Wheeler was a prisoner who wanted to mail his autobiography. The prison employees air mailed his autobiography, which became lost in the mail and charged his account for the cost of the mail. Wheeler wished to file criminal charges against the prison employees claiming they were unauthorized to charge his account for the air mail and responsible for the loss of his items by the postal service. The Court found the prison employees immune from the suit because of sovereign immunity and this was clearly a frivolous suit brought before the court.

91. In the present case before the Court, there are ongoing crimes being committed against Givey, notably, he has been repeatedly drugged and threatened, to interfere with a judicial proceeding, there is overwhelming evidence his post office mail has been interfered with to interfere with judicial proceedings and there is overwhelming evidence that the judges in a court case were switched to interfere with a judicial proceeding, there is evidence a sitting judge is attempting to utilize the abuse of psychiatry to discredit a whistleblower, which is a matter still pending in that court and in state court the filing staff are illegally entering orders into their filing system that have not been signed by the prothonotary as required by Pa Code Rule § 2521. These all are serious federal crimes.

92. These are not frivolous accusations such as the court cases cited by Sherer, they are some of the most serious federal crimes and there is no lawful reason the DOJ would refuse to speak to Givey, take a criminal complaint, review evidence and investigate. Sherer cited no precedent for a refusal to speak to a victim and take a criminal complaint and review evidence.

93. Sherer's brief does not describe a functioning law enforcement agency in any democratic country. The DOJ and FBI are federal law enforcement agencies with a federal mandate to

20

investigate and prosecute federal crimes. Under Robert Mueller, the special prosecutor who investigate Trump on the Russia hoax, Mueller reorganized the FBI in 2002 significantly reducing its organized crime task forces, as reported to Congress in a 2010 report, titled <u>Organized Crime in the United States Trends and Issues for Congress</u>[4], then the FBI focused on gangs and not organized crime and the DOJ shut down its organized crime task force in 2008.

94. The only time in the history of this country that law enforcement has refused to take a criminal complaint it has been to hide illegal conduct. Over 1,000 whistleblowers have reported law enforcement refused to take a criminal complaint from them, Jeffrey Epstein (254 victims over 10 years), Pennsylvania Kid for Cash scandal (over 400 alleged victims over 10 years), Jerry Sandusky (52 alleged victims over 15 years), Larry Nassar (265 alleged victims over 18 years), Harvey Weinstein (over 100 alleged victims over 10 years), Mike Jeffries (dozens of alleged victims over 20 years). In those cases, extensive illegal conduct was eventually discovered, sometimes with hundreds of criminal complaints, exposing the illegal conduct had been illegally hidden for years.

95. While Sherer's brief argues that the DOJ does not have listen, review evidence or take a criminal complaint from a victim, the important question arises, "Why would the DOJ do that?" And there is no lawful reason why the DOJ would refuse to speak to Givey, review evidence and take a criminal complaint.

96. The DOJ shut down its organized crime task force in 2008. According to Gerald Shur, the U.S. Attorney who created the witness protection program, organized crime would always threaten witnesses, their children, their friends and family members as his reason for creating

---

[4] https://sgp.fas.org/crs/misc/R40525.pdf

21

the witness protection program. Prior to 2008, when the DOJ shut down its organized crime task force, organized crime has always corrupted government officials and law enforcement (Whitey Bulger[5], a organized crime boss had corrupted local, state and federal law enforcement officials from 1975-1991, including the entire FBI Boston field office), threatened witnesses and committed various criminal acts such as public corruption.

97. Every conceivable means to threaten Givey to back down from his criminal complaints has been utilized, including tampering with judicial proceedings, drugging Givey, threatening Givey's friends and family, removing the custody of his children and threatening Givey to commit perjury, in an attempt to get Givey to testify that he no longer believes in the criminal allegations.

98. With the DOJ's organized crime task force closed for last 18 years, Sherer's brief makes the stunning claim that it is implausible that organized crime could be doing the same things that organized crime has done for the last 100 years and the same things recently reported that organized crime is doing in other countries.

99. In the current environment where the DOJ's organized crime task force has been shut down for 18 years it is very likely that organized crime is continuing to do what they have always done, including threatening witnesses and committing crimes, now without any interference from the federal government.

100.    If the Court finds it cannot force the DOJ under a mandamus petition to take criminal complaint, review evidence and investigate, the Court also holds the power to convene a grand jury or assign a special prosecutor.

---

[5] https://en.wikipedia.org/wiki/Whitey_Bulger

**101.   CUSTODY LAWSUIT BROUGHT TO INTERFERE WITH FEDERAL LAWSUIT**

102.   In 2024 Givey filed a lawsuit in the Pa Commonwealth Court claiming to be an attacked whistleblower and demanding the State Attorney General take a criminal complaint. The State Attorney General did not respond. The Commonwealth Court issued an anonymous, per curiam, Sua Sponte order, illegally dismissing Givey's petition (Exhibit 7) and the order was not signed by the prothonotary as required for a valid order of the court. The Pa Supreme Court's rules governing per curiam orders requires the court to identify which justices did not participate in the decision, which the order did not do. It is a federal crime for court staff to enter an order into the court's filing system that is not signed by the prothonotary.

103.   After Trump won the election in November 2024 Givey stated he will be refiling his federal lawsuits demanding the DOJ take a criminal complaint.

104.   The mother of Givey's children is "A.G.'". Her Father was one of the most powerful federal law enforcement officers in the country during President Obama and Biden's administrations, who to Givey's understanding worked closely with the FBI and DOJ and was sent around the country to reorganize several federal field offices. A.G.'s father could have helped Givey make a criminal complaint and refused to help him when he had the opportunity.

105.   On December 11, 2024 Givey had a petition before the Pa Supreme Court requesting witness protection and demanding law enforcement take a criminal complaint. On December 11, 2024 A.G. filed a petition requesting emergency custody of their children. A.G. was denied emergency custody at that time and requested a two-hour emergency hearing that was scheduled on January 28, 2025 in courtroom 14 before Judge Analisa Sondergaard (Exhibit 8). This occurred at 3:50 pm.

106.	Between 3:50 pm and 4:30 pm on December 11, 2025 the Court illegally transferred the case to Judge Allison Bell Royer, who has a conflict of interest in the case, and rescheduled the case in Courtroom 7 on January 3, 2025 at 9:30 am for a full day hearing (Exhibit 9), where A.G. testified all morning and Givey testified in the afternoon. A typical emergency custody hearing lasts 30-60 minutes. A scheduling conflict would change the date of the hearing not the judge nor would it change a two-hour hearing to a full day hearing and Givey was advised by the Court that it would be illegal for a litigant to choose their judge or switch a judge, in order to influence the conditions or outcome of a hearing, as it would be a federal crime. Chester County Court Local Rules of Civil Procedure 200 A requires "when the case is commenced it shall be assigned for trial and pre-trial proceedings to a designated judge. The designated judge shall be responsible for the matter from the time of the initial filing until final disposition".

107.	So, on December 11, 2024 A.G. filed an emergency custody petition and was denied, then the court staff illegally transferred judges, changed the hearing from a two-hour hearing to a full day hearing and rescheduled the hearing from January 28, 2025 to January 3, 2025, before Trump took office.

108.	Petitioner was threatened before the hearing on January 3, 2025 that if he did not commit perjury and testify that he is mentally ill and no longer believes in the criminal allegations then he would never see his children again.

109.	On January 3, 2025 Judge Royer failed to disclose her relationship with Tom Hogan, the former District Attorney for Chester County who endorsed her political campaign for Judge (Exhibit 10), who's office Givey presented evidence of misconduct. Judge Royer's relationship with Tom Hogan would have led her to have a preconceived opinion about Tom Hogan and his District Attorney's office, which creates a clear bias concerning Givey's allegations of

misconduct against Tom Hogan's District Attorney's office. Evidence of misconduct at Tom Hogan's District Attorney's Office is reported in US Supreme Court case 25-6881 and advanced below. A separate federal lawsuit by different party also made similar claims concerning Tom Hogan's district attorney's office, where another man from Givey's jurisdiction claimed he was illegally drugged, his medicine and medical treatment were interfered with, the custody of his daughter was interfered with and he was illegally forced into a mental institution and fraudulently declared mentally ill with the Tom Hogan's office refusing to take a criminal complaint.

110.    At the emergency custody trial on January 3, 2025, Givey's attorney asked A.G. "so basically you have filed this emergency petition based on solely what you read in the petition that he filed"?, A.G. answered, "Correct.", (153 EDA 2025, Transcript p.37 Line 13-18) referring to a petition Givey filed before the United States Supreme Court in May 2024 (Givey v DOJ, Case No. 23-7063) and entered into evidence by A.G., that was an appeal from a case initiated in Federal Court 3 years prior.

111.    On January 3, 2025, A.G. stated "If he keeps filing these cases, that makes me very wary that he is going to have another psychotic break.", falsely claiming that Givey had a psychotic break twelve years ago, while Givey maintains he was illegally drugged that night and demands a criminal investigation into the events that occurred.

112.    Givey's attorney asked "Ma'am, you said one of the last things you said during your direct testimony is that you had concerns about Mr. Givey's health because of what happened last time?", A.G. answered "Yes". (1/3/25 Transcripts p. 34, Line 20-25, p.35)

113. Givey's Attorney asked "And that last time you are referring to was in 2014?", A.G. answered "Yes", with A.G. admitting there had not been a single incident concerning the children in the last eleven years.

114. Givey's attorney asked, "You didn't file anything to change the custody schedule based on, if you petition anything that the children said; right?", A.G. answered "Correct". (153 EDA 2025, Transcript p. 38 Line 7-10)

115. The trial court itself even stated that the court may not render advisory opinions on hypothetical events that might occur in the future. **Philadelphia Entertainment and Development Partners, L.P v. City of Philadelphia,** 937 A.2d 385 (Pa. 2007)(courts should not give answers to academic questions or render advisory opinions or make decisions based on assertions as to hypothetical events that might occur in the future). (153 EDA 2025, Opinion Sur Rule 1925a p.5).

116. **Gates**, citing **Lerner v Lerner**, 954 A.2d 1229, 1235 (Pa.Super 2008) ("It is specifically, DENIED that Father has the right to file a Petition for Modification simply to secure privileged information concerning Mother's medical condition when he has no evidence that Mother's medical condition has harmed the minor child.")

117. "Unless it can be shown that a parent's conduct has had harmful effects on a child, it should have little weight in making a custody decision." (quoting Commonwealth ex rel. Pierce v. Pierce, 493 Pa. 292, 426 A.2d 555, 558 (1981)).

118. The trial Court stated "There have been no reports or evidence of any violence or assaultive behavior by either of these parties towards each other or the Children." (153 EDA 2025, Opinion Sur rule 1925 (a), p.56)

26

119.    The trial Court only has emergency jurisdiction under Title 23 Pa Code § 5424 to issue an emergency custody order in the event of an emergency necessitated by abuse, mistreatment or an imminent threat of physical harm to the children. A court needs proof, such as police, Child Protective Services or hospital reports that the children have been harmed to have emergency jurisdiction. The potential that the children could possibly be harmed is not enough to grant the court emergency jurisdiction.

120.    Judge Royer stated that she read Givey's response to Mother's Petition for Special relief, including his allegations of misconduct against Tom Hogan's District Attorney's office (Jan. 3, 2025, Transcripts p. 3).

121.    During the emergency hearing on January 3, 2025 A.G.'s lawyer had A.G. read out loud Givey's allegations of misconduct against Tom Hogan's office during direct testimony (Transcripts, Jan. 3, 2025, p. 26-27).

122.    Contrary to the evidence presented, Judge Royer called Givey's allegations of misconduct against her political ally, Tom Hogan's District Attorney's Office, a "delusion" and a "conspiracy theory", suspended his custody rights and illegally ordered Givey to undergo a psychological evaluation (Exhibit 11).

123.    Judge Royer specifically ordered Givey to provide Dr. Gransee, a doctor chosen by A.G. to perform a psychological evaluation, with copies of Exhibits M-3 and M-4, (Exhibit 12) which is his lawsuit (US Supreme Court, Givey v DOJ, 23-7063) to have Dr. Gransee assess Givey's allegations, including allegations of misconduct concerning Tom Hogan's District Attorney's office.

124.   Givey has been forced through his custody agreement to see a psychiatrist and psychologist for last twelve years under the threat that she will remove the custody of his children.

125.   Judge Royer admitted that the court could not compel Givey to testify about the details of his criminal complaints that he shared with his doctors as it would violate 42 Pa C.S. § 5944 (Psychiatrist Psychologist Patient Privilege), then Judge Royer claims Givey can be compelled to share that same information, already deemed protected, to Dr. Gransee and she wishes to make Dr. Gransee's assessment public stating an "independent medical examiner will not be subject to the confidentiality requirements of 42 Pa C.S. § 5944 because he will have no treatment relationship with Father." (153 EDA 2025, Opinion Sur Rule 1925 (a), p.51). During the hearing Judge Royer overruled Givey's objections and ordered him to testify about the details of his criminal complaints. It is worth noting that if Givey is compelled to testify about his criminal complaints or reveal that information in a psychological evaluation the information could endanger more witnesses and lead to more evidence being destroyed.

126.   With no history or allegations of violence against Givey, Judge Royer was presented with two doctor notes stating Givey was not a danger to himself or others and able to care for his children but Judge Royer responded, "we did consider them; we simply found that they did not answer the question as to whether either provider was aware of Father's conspiracy theories." (Opinion Sur Rule 1925 (a), p.52).

127.   So, as Givey presented evidence in court of the abuse of psychiatry being used to discredit him and two doctor's notes stating he was not a danger to himself or his children, in an emergency hearing that requires proof of abuse or mistreatment of the children for the court to have emergency jurisdiction under Title 23 Pa Code § 5424, according to her own words,

28

the main concern of Judge Royer was ordering a psychological evaluation, that violates Pa.R.C.P. 1915.8 by not stating the conditions or scope of the evaluation as required by statute, was to have a doctor chosen by A.G. evaluate Givey's allegations of misconduct against her political ally, Tom Hogan's District Attorney's Office, and potentially have him diagnose Givey and then make that report public. This case presents evidence that the abuse of psychiatry is being used to discredit whistleblowers. This would be the first time reported in the United States of a judge utilizing the abuse the psychiatry to discredit a whistleblower.

128. A.G. and Judge Royer were unable to cite any precedent in any court to support the order to force Givey against his will to undergo a psychological evaluation, which would clearly be a violation of Fourteenth Amendment's protections against unwarranted and forced mental health evaluations.

129. On January 3, 2025 Judge Royer suspended Givey's custody rights and ordered him to undergo a psychological evaluation with a doctor chosen by A.G. in an order that clearly violated Pennsylvania Law, under Title 23 Pa Code § 5424, Pa.R.C.P. 1915.8, 42 Pa C.S. § 5944 and the First and Fourteenth Amendment of the United States Constitution (see US Supreme Court case no. 25-6035).

130. The threats made against Givey in an attempt to have him commit perjury and testify that he no longer believes his criminal complaints, A.G.'s own statements, the timing of her petition, the illegal transfer of judges, to a judge with a conflict of interest, the change from a 2-hour hearing to a full day hearing, the orders and statements from Judge Royer and the timing of the rescheduled hearing leads Givey to believe the true purpose of the custody lawsuit is to interfere with Givey pursuing this current petition of his criminal complaint through the courts.

29

131. The custody case was then assigned back to Judge Analisa Sondergaard, who presided over the pre-trial hearing and there was only supposed to be one pre-trial hearing. Then the custody case was transferred back to Judge Royer. After Givey made allegations that Judge Royer was illegally assigned, she lacked jurisdiction and violated his rights, the Court then, without explanation, illegally transferred the custody case to Judge Cauley, who recently issued a ruling contrary to federal law violating Givey's rights (see US Supreme Court case 25-6881) by denying him a remote appearance for a custody hearing. Judge Cauley is an expert in mental health litigation and it is simply not believable that Judge Cauley was randomly assigned to this custody case as required by federal law.

**132.  EVIDENCE OF MISCONDUCT**

**133.  AT THE DISTRICT ATTORNEY'S OFFICE**

134. Givey presented evidence to Judge Royer in his Response to A.G.'s Petition for Emergency Custody to support his allegations of misconduct, including allegations of misconduct against Tom Hogan's District Attorney's office that Judge Royer called a "delusion" and a "conspiracy theory".

135. For about 5 years Givey had no issues with his rental properties, then on or about 2010 to 2012 Givey received around a dozen violation letters and multiple citations for alleged trash violations (Exhibit 13, Exhibit 14), allegedly committed by Givey's tenants, that did not comply with Pennsylvania's nuisance laws and none of the violations or citations were substantiated in Court. These violations add points to a landlord's rental license that can be used to revoke the building's rental license.

136. The code enforcement officer was even opening Givey's tenants' trash cans and inspecting the garbage inside the trash bags to look for violations. Givey followed a code

enforcement officer on several occasions during her morning enforcement schedule to discover she was targeting specific properties with enforcement actions while ignoring the same conditions at other properties and even appeared to have a list of properties she was targeting.

137. A code enforcement officer then alleged Givey's property violated fire code regulations (Exhibit 15) (which could result immediate revocation of a rental license and possible incarceration for non-compliance) and demanded Givey install an alarm system, hard-wired and interconnected through the walls, requiring each alarm to also be hard-wired to an electrical outlet and in retaliation for Givey emailed the Mayor, Borough Manger and his Supervisor over the illegal enforcement actions taken against him, the officer sent additional fraudulent claims of code violations, demanding Givey submit an NFPA test that requires the alarm system to be connected and monitored by an alarm company 24 hours a day (Exhibit 16) and cited a section of the International Fire Code pertaining to new construction not existing 100 year-old single family homes.

138. Givey was clearly being targeted since the home had been a rental property for years and always previously passed rental inspections. The Borough code and International Fire Code pertain to all properties, not just rental properties and the Borough did not provide notices to every home owner in the Borough demanding they install a similar fire alarm system.

139. Givey did have a Fire Alarm company service his two apartment buildings and the owner of the company argued with the Borough on Givey's behalf and after arguing for several days the Borough withdrew all of the fire code requirements stated in their violation letters.

140.    The owner of the fire alarm company told Givey that the Borough then threatened his business if he ever helped Givey again and he deleted his email account, where he had argued back and forth with the Borough.

141.    Givey owned two multi-unit apartment buildings and heard of two occasions where the Borough revoked a multi-family property's rental license and then rezoned the building as a single-family dwelling (greatly diminishing the value of the property). In another instance Givey heard of, the Borough levied $70,000 in fines against a property owner and the government officials appeared in court with a friend who agreed to pay the fine in exchange for the title of property being transferred into his name. Givey had evidence that a Borough Code Enforcement officer presented false and misleading testimony during his trial and the Borough had the court reporter change the court transcripts of a trial.

142.    Givey reported the Borough officials to the Pa Department of Labor and Industry who licenses fire inspectors with the State, since enforcement officers cannot enforce fire codes in the state with a license. After being told by the intake officer that if this conduct was substantiated it would result in the revocation of their state licenses, then The Pa Department of Labor and Industry refused to investigate (Exhibit 17).

143.    The local police, county district attorney and State Attorney General repeatedly refused to take a criminal complaint from Givey. On October 31, 2012 Tom Hogan's Chief of Staff intervened when a Chester County detective requested a detective to be assigned to Givey's case to investigate potential crimes and refused to assign a detective claiming no criminal laws had be violated (Exhibit 18). The bar association would hang up on Givey refusing to refer a lawyer and the law firms he contacted were not interested in supporting a lawsuit because they were all making money defending against these citations.

### 144.   JANUARY 9, 2025

145.   On January 9, 2025 Givey entered the Chester County Courthouse to hand deliver his Notice of Appeal of Judge Royer's January 3, 2025 emergency custody order. Givey was detained by court security on false allegations. As Givey stood there calmly and speechless, court security repeatedly screamed into his walkie "Calm down sir! I'm asking you to calm down!", Givey believes in an effort to create false evidence that he was causing a disturbance. A corporal from the sheriff's department came and claimed that there was a complaint from the court reporter's office in Givey's name that he had created a disturbance and was demanding transcripts.

146.   After Givey was released he emailed the secretary from the court reporter's office (Exhibit 19), who replied that she spoke with the corporal and stated Givey was polite and respectful and told him that she is unaware of any complaint originating from the court reporter's office. She said the corporal then claimed that the complaint originated from somewhere else. The following day Givey returned to the courthouse and spoke to the corporal who claimed it was a misunderstanding and that Givey should not have been detained.

### 147.   JANUARY 13, 2025

148.   On January 13, 2025, the trial judge's Law Clerk emailed Givey's attorney stating "Your client, Mr. Givey, filed the attached pro se Notice of Appeal last Thursday, 1/9/25. Would you please advise the Court as to whether you will be prosecuting this appeal for him. I don't see that he has filed a notice of self-representation." (Exhibit 20) This prompted Givey's attorney, who had represented him for ten years, to demand that he sign a pro se agreement and submit it to the Chester County Court. Givey then hired another attorney and paid her over seven thousand dollars and then she demanded he sign a pro se agreement. When Givey refused to

33

sign the pro se agreement she filed a Notice to Withdrawal as his attorney. Givey confirmed with the Superior Court prothonotary that he can represent himself in his appeal and continue to have an attorney of record in his Chester County custody case and signing the pro se agreement would leave Givey without legal representation.

### 149. APPEAL 153 EDA 2025 PA SUPERIOR COURT

150. On appeal of the January 3, 2025 order to the Superior Court Judge Sullivan who authored the Superior Court opinion 153 EDA 2025 (Exhibit 21), contrary to the precedent she cited, denied Givey's appeal and his motion to strike false statements (see US SUPREME COURT CASE 25-6035), worked for the Chester County District Attorney's office from 2002-2012 and from the Pennsylvania Attorney General's office from 2017-2021, years which Givey was blocked from making a criminal complaint. Givey believes that Judge Sullivan should have recused herself due to this conflict of interest. Givey believes it is very unlikely that Judge Sullivan was randomly assigned to this case and believe that court staff selectively assigned Judge Sullivan, knowing she would rule against him which would hide the misconduct from the law enforcement agencies she worked for. As you can see the judges were identified in this order and the prothonotary signed this order.

### 151. APPEAL 1318 EDA 2025 PA SUPERIOR COURT

152. A valid order from the Superior Court must be signed and attested to by the Prothonotary recognizing the order as a valid order of the court, under Pa Code Rule § 2521. Entering an order into the Court's filing system without a signature by the prothonotary is a federal crime. Superior Court Order 1318 EDA 2025 was not signed or attested to by the Prothonotary as a valid order of the Court (Exhibit 22). It was also an anonymous, per curiam order that violated the Pa Supreme Court's rules governing per curiam orders that cannot be traced back to any

34

judge because per curiam orders from the court must indicate which judges did not participate in the decision. According to the Pennsylvania Supreme Court's Rules governing per curiam decisions "5. A per curiam order shall indicate if a Justice did not participate in the consideration or decision of the matter."[6] Givey called the Superior Court and they said they have no record of who participated or who did not participate in the decision for the order. Therefore, it is invalid and Givey believes it was not decided by a judge.

### 153. APPEAL 362 MAL 2025 PA SUPREME COURT

154. Givey's appeal to the Pennsylvania Supreme Court was also an anonymous per curiam order, that did not indicate which judges did and did not participate in violation of the Pennsylvania's Supreme Court's rules governing per curiam rulings (Exhibit 23). Therefore, this order was invalid.

### 155. APPEAL 347 EDA 2026

156. This appeal arises from the Jan. 20, 2026 order from the Chester County Court of Common Pleas by Judge Cauley denying Givey the request for a remote appearance for a custody hearing. Givey has a credible fear that if he enters that courtroom, which has no video record or audio record of hearings that he will be arrested under false charges. Givey filed a pro se Notice of Appeal on January 29, 2026 in the Chester County Court of Common Pleas.

157. The Pa Superior Court in case 347 EDA 2026 erroneously assigned a lawyer as representing Givey in his appeal and that lawyer was not representing Givey in his appeal. Givey promptly filed a motion to proceed pro se in his appeal. The Pa Superior Court did not respond to Givey's motion to proceed pro se in his appeal, rejected Givey's filings, then dismissed his appeal claiming he did not respond in a Sua Sponte, anonymous, per curiam

---

[6] https://www.pacourts.us/Storage/media/pdfs/20221215/200130-supremeiopupdate1222.pdf

35

order that was not signed by the prothonotary (Exhibit 24). Givey had a right to represent himself in this appeal. The court issued an anonymous, per curiam order to show cause (Exhibit 25) before the trial court had delivered its 1925 opinion to Givey requiring Givey to respond to the show cause order guessing at what the trial court's reasons were and that order was not signed by the prothonotary. Judge Cauley's trial court opinion 1925 was dated on Feb. 4, 2026 and ordered Givey to respond in ten days and Givey responded on Feb. 19, 2026 immediately after he received notice of the filing, then the trial court claimed the Givey's appeal should be dismissed as untimely (Exhibit 26). PaRAP 1925 states that the party has 21 days to respond once the trial court's 1925 order is entered onto the docket and the trial court's order was entered onto the Pa Superior Court's docket on March 2, 2026.

158.    The March 6, 2026 order dismissing the appeal did not comply with the Pa Supreme Court's rules regarding per curiam orders and the order was not signed by the prothonotary as required by Pa Code Rule § 2521 for a valid order of the court. It is a federal crime to enter a Pa Superior Court order into their filing system without a signature by the prothonotary and three orders in this appeal were entered into the filing system without a signature from the prothonotary.

159.    **HISTORY OF EVENTS IN THIS CASE**

### *160.    School District 1*

161.    Givey was a teacher at School District 1 in 2003. Around this time a politically connected Administrator 1 was hired, who claimed to be personal friends with the Democratic Pennsylvania Secretary of Education.

36

162. Administrator 1 was also friends with several of Givey's professors at University 1's doctoral program. University 1 is a politically connected University who employed Joseph Biden as a professor for many years and houses the largest law school in the area.

163. Administrator 1 hired several of her friends as teachers who were not certified with proper teaching certificates, while hundreds of certified teachers were applying for every district teaching position.

164. Givey became embroiled in a professional dispute with one of Administrator 1's friends and following a complaint to Human Resources, the school board eliminated the positions of Administrator 1 and her friend.

### 165. FRAUD, WASTE OR ABUSE OF FEDERAL TITLE I FUNDS

166. Following the professional dispute Givey left the district and was hired by Administrator 2, a graduate of University 1's doctoral program, into a coaching position in School District 2.

167. Administrator 2 is politically connected, friends with the Democratic Mayor of a major United States City and, Givey was told, held high priced fundraisers to raise hundreds of thousands of dollars for the Democratic party and President Obama and Joseph Biden's election campaigns.

168. Givey believes after Administrator 1 was fired following Givey's complaint to human resources, Administrator 1 reached out to her network of friends at University 1 to interfere with Givey's academic progress at the University, his career (with a graduate of University 1 being his supervisor) and his rental property business (in a town with a Democratic mayor). Some of the Judges and lawyers related to Givey's court cases are graduates of

University 1, including Judge Royer and Givey's ex-wife's attorney who brought the custody lawsuit on December 11, 2024.

169.    Givey was employed by School District 2 from 2005 to 2019, except for one school year.

170.    Givey attempted to report what he believed to be criminal conduct to the Attorney General's office and FBI concerning his previous employer's technology contracts and both law enforcement agencies repeatedly refused to speak to Givey or take a criminal complaint for years, so there is no existing record.

171.    Givey worked for the Technology Department and as part of his job duties was responsible for approving school technology purchases so Givey had close, personal knowledge of the district's technology contracts and school purchases. Givey has a lot evidence including affidavits, contracts and price lists from his employment.

172.    Administrator 3 (who previously negotiated the district's $50 million of technology contracts) claimed he was setup, sabotaged at work and then fired. Givey found the newly negotiated contracts after his departure, that district had a no bid contract on a $24 million contract (Exhibit 27) (the price principals were paying for chromebooks went from about $173 (Exhibit 28) to $328.07 (Exhibit 29), the contracts quadrupled the price principals paid for printers, did not always award the contract to the lowest bidder, over paid money more than what was negotiated in the contracts and required millions of dollars in unnecessary work to be performed. Many of these purchases were federal Title I funds.

173.    Givey also had worked in over 50 schools during his tenure and had access to the teachers' schedules and had personal knowledge that hundreds of people were given jobs where they did little to no work including the Democratic Mayor's best friend (assigned to

teach one class a day, where he watched television shows every day for fifty minutes), a convicted child murderer appointed to teach one of the district's top schools (bypassing the State's criminal record check due to his connections) and the former mob boss of Philadelphia's son (who was only assigned six students and taught one class a day for twenty minutes then went home), all while earning a full-time salary and being eligible for a State pension.

174. Givey even knows of a high school setup primarily to cater to illegal immigrant children costing the district millions of dollars in Title I funds.

175. Givey's previous employer has a history of allegedly firing whistleblowers, exhibited through news articles and court cases filed against his previous employer.

176. *University 1*

177. Givey attended University 1's doctoral program from 2001 until 2014. University 1 is a politically connected university that employed Joseph Biden for many years and graduated some of the judges and lawyers involved with Givey's court cases, including Judge Royer, who illegally removed the custody of his children and Givey's ex-wife's attorney who brought the custody lawsuit on December 11, 2024.

178. Givey filed a grievance with University 1 believing his progress on his dissertation was being arbitrarily interfered with. In a meeting with the University, Givey was offered to attend the University for free to complete his degree, which he refused, threatening to sue the University. Givey met with his lawyer, at the time, stating he may report the University to the FBI because Givey believed the graduation rate from the program was very low and the vastly different standards applied to dissertations, which would implicate federal student loan money.

179.   Several days later Givey was illegally drugged resulting in a car collision in Delaware and Givey suffered a severe concussion. With no history of mental illness, Givey was forced against his will into a mental health facility, with no hearing or judicial review, in violation of Delaware state law, then immediately told he was mentally ill, by an unidentified doctor, contrary to the diagnostic criteria utilized in the United States to diagnose mental health conditions, that requires a six-month observation period, a continuous two-weeks of observed delusions and extensive review of the patient's mental health history.

180.   Givey was released from the mental health facility nine days later. Givey then later accepted the University's offer, attended the University for free for one semester and graduated with his doctorate degree.

181.   *Fraudulent Diagnosis of Mental Illness*

182.   Around the same time Givey and three of his friends including his two best friends, all with no history of mental illness, were sabotaged at work, followed and instantly diagnosed as mentally ill.

183.   Several days after the meeting at University 1 in February 2014, Givey was illegally drugged resulting in a car collision in Delaware and Givey suffered a severe concussion. A.G. prevented Givey's family from getting Givey from the hospital and during that time and with no history of mental illness Givey, at A.G.'s direction, was forced into a mental health facility against his will without a hearing or judicial review in violation of Delaware state law. In less than 24 hours, without speaking to Givey or giving Givey any type of assessment, Givey was led to a room and immediately told, by an unidentified doctor, he had schizoaffective disorder then immediately told to leave the room. A.G.'s testimony verifies that Givey had been instantly diagnosed as mentally ill (1/3/25, Transcripts p. 10).

40

184.	According to the DSM (Diagnostic and Statistical Manual of Mental Disorders) the criteria utilized in the United States to diagnose mental health conditions, a patient suspected of having schizoaffective disorder needs to be given an assessment (which to date has never been done), then if the assessment indicates schizoaffective disorder, the patient must be put on a minimum of six month observation period, where they must be observed experiencing hallucinations or delusions for a continuous two week period of time along with symptoms of mania or depression. None of this could have occurred in less than twenty-four hours and the patient must be observed for the entire six months prior to diagnosis, which clearly was not done and the diagnosis was provably fraudulent.

185.	The DSM has a rigorous standard for the classification of beliefs as delusions. Plausible claims of government fraud, waste or abuse directly related to one's job responsibilities would not be considered a delusion. Schizoaffective disorder is a form of schizophrenia, with schizophrenia being the primary diagnosis in the abuse of psychology since people with schizophrenia will deny they have the mental health condition.

186.	Nine days later, Givey was released from the mental facility and A.G. forced Givey to take medications and attend therapist and psychiatrist appointments, threatening Givey that if he did not comply she would divorce him and he would never see his children again. After their divorce she forced Givey to continue to take medications and attend therapist and psychiatrist appointments through their custody agreement.

187.	Then Givey filed lawsuits petitioning the courts to compel law enforcement agencies to take a criminal complaint, under the First Amendment of the United States Constitution, claiming he is an attacked whistleblower and that the mental health diagnosis was provably fraudulent, to discredit him as a whistleblower. During the course of the lawsuits Givey was

41

illegally drugged leading to an emergency room visit on Christmas day 2023 and Givey tested positive for buprenorphine.

188.    Givey noted that in the years leading up to Givey's allegations, Pennsylvania's Democratic Governor disbanded its Organized Crime Commission, the Federal Bureau of Investigation (FBI) reduced its organized crime task forces across the country by 90% (then gave the remaining FBI agents terrorist duties, instead of organized crime responsibilities) according to organized crime observers[7] and according to a 2010 report presented to Congress, titled Organized Crime in the United States Trends and Issues for Congress[8] and The Department of Justice in the Eastern District of Pennsylvania disbanded its organized crime task force in 2008.

189.    During this time over 1,000 whistleblowers have reported law enforcement refused to take a criminal complaint from them, Jeffrey Epstein (254 victims over 10 years), Pennsylvania Kid for Cash scandal (over 400 alleged victims over 10 years), Jerry Sandusky (52 victims over 15 years), Larry Nassar (265 alleged victims over 18 years), Harvey Weinstein (over 100 alleged victims over 10 years), Mike Jeffries (dozens of alleged victims over 20 years).

190.    Over a hundred of these victims reported being surveilled after attempting file a criminal complaint with law enforcement (New Yorker article, Harvey Weinstein Army of Spies[9]), (CNN, "Jeffrey Epstein allegedly hired private investigators and engaged in a campaign of

---

[7] https://www.rollingstone.com/culture/features/is-the-american-mafia-on-the-rise-w451888
[8] https://sgp.fas.org/crs/misc/R40525.pdf
[9] https://www.newyorker.com/news/news-desk/harvey-weinsteins-army-of-spies#:~:text=Two%20private%20investigators%20from%20Black,least%20four%20meetings%20with%20McGowan.

intimidation against accusers"[10]) and Mike Jefferies[11] (allegedly hired a security company to monitor and threaten his victims for twenty years).

### 191.   Violation of 18 U.S.C. § 3332(a)

192.   18 U.S.C. § 3332(a) requires any United States Attorney receiving evidence of a federal crime to report that crime to a grand jury. The Assistant US Attorney does not have the discretion to decide that they are not taking criminal complaints or that they wish to ignore federal crimes.

193.   Assistant US Attorney Mark Sherer, claiming to represent Pamela Bondi, Kash Patel and David Metcalf, either intentionally or with a complete lack of understanding misstated, misconstrued and mischaracterized Givey's allegations in his Motion to Dismiss in federal district court and the only way to clear up any misunderstandings would be to speak with Givey, review evidence and take a criminal complaint.

194.   It is a common saying among lawyers, if you cannot argue on the facts, then argue on the law and if you cannot argue on the law then argue on the facts. Sherer has not made an argument on the law that Givey does not have a Constitutional Right under the First Amendment to petition the government for redress of grievances, which federal courts have recognized as filing a criminal complaint with law enforcement. And Sherer's argument on the facts is disingenuous, he misstates many of Givey's claims then makes sweeping claims

---

[10] https://www.cnn.com/2019/07/12/us/jeffery-epstein-witness-intimidation/index.html
[11] https://www.nbcnews.com/news/us-news/former-abercrombie-fitch-ceo-charged-sex-trafficking-dementia-lawyers-rcna185353

Givey's allegations are "implausible" and a "bizarre conspiracy theory", without stating specifically what he is calling implausible or a bizarre conspiracy theory, making his comments impossible to directly defend against. For example, if Sherer were to allege that it is implausible that someone climbed on Givey's roof and damaged it, Givey could present the pictures of the pry marks on the wood from roof that was damaged to prove that someone damaged it. It is a fact that local, state and federal law enforcement have refused to take a criminal complaint from Givey, meaning any crime can committed against him and he has no recourse.

195.   Mark Sherer's, response for the DOJ, and refusal to take a criminal complaint from Givey and report evidence of crimes to a grand jury is a violation of the First Amendment of the United States Constitution and 18 U.S.C. § 3332(a) under federal law and an ethical violation.

**196.   CONCLUSION**

197.   Givey was a whistleblower and Obama and Biden's FBI and DOJ refused to take a criminal complaint from Givey for years leading to Givey being illegally attacked; his rental property business was illegally attacked; threats and illegal drugging against his friends and family; Givey and three of his friends were followed, sabotaged at work and fraudulently declared mentally ill; Givey was threatened to commit perjury and testify that he no longer believes in his criminal complaints and when he refused his children were illegally removed from his custody; his mail has been interfered with to tamper with a judicial proceeding; judges have been switched in lawsuits against Givey to tamper with judicial proceedings; illegal

44

orders are being entered into the state court filing system to tamper with judicial proceedings; and a sitting judge has ordered a psychological evaluation, with evidence it was done to utilize the abuse of psychology in order to discredit a whistleblower. Givey believes agents from Biden's DOJ, who still work at the DOJ, have rigged lawsuits in local, state and federals courts in the same jurisdiction President Trump claims his 2020 election lawsuits were rigged against him. There are numerous federal crimes that have been committed against Givey and Givey has a Right under the First Amendment of the United States Constitution to make a criminal complaint and have that criminal complaint referred to a grand jury under 18 U.S.C. § 3332(a).

198.   **PRAYER FOR RELIEF**

199.   Givey prays this court will issue a writ of mandamus to order the DOJ to take a criminal complaint and refer that criminal complaint to a grand jury under 18 U.S.C. § 3332(a);

200.   Or in the alternative convene a grand jury;

201.   Or in the alternative assign a special prosecutor;

202.   And provide Givey and his family with witness protection.

Respectfully Submitted,

Ryan Givey

Date: 3/24/26

45